# THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **CPL. JEFFREY A. TAYLOR** | : | |
| | : | |
| **Plaintiff** | : | |
| **v.** | : | **3:10-CV-2057** |
| | : | **(JUDGE MARIANI)** |
| **COL. PAWLOWSKI,** et al. | : | |
| | : | |
| **Defendants** | : | |

## MEMORANDUM OPINION

The present matter is before the Court upon the motion of Defendants Col. Pawlowski,

Col. Brown, Col. Bandy, and Lt. Brahl for Summary Judgment (Doc. 32), in addition to the

motion of Defendants Captain Martin Henry, Sergeant Judith Holly-Storms, and Trooper

Andrea Weichman for Summary Judgment (Doc. 31). The parties have completed briefing on

the motions, and they are now ripe for disposition.

Plaintiff Jeffrey A. Taylor ("Plaintiff") is a corporal with the Pennsylvania State Police.

Plaintiff alleges that he was retaliated against for engaging in allegedly protected First

Amendment activities, and that he suffered further discrimination based on his gender.

Specifically, Plaintiff's Complaint alleges two counts: (1) that Pawlowski, Brown, Bandy,

and Brahl violated his First Amendment rights by retaliating against Plaintiff for his complaints

related to an allegedly illegal citation quota system, and (2) that Holly-Storms, Henry, and

Weichman retaliated against him in violation of his First and Fourteenth Amendment rights.

## STATEMENT OF FACTS[1]

Jeffrey Taylor is a Corporal with the Pennsylvania State Police ("State Police"). At all relevant times, Taylor was assigned to the Troop T, Pocono Station ("Pocono Station"). (Compl., Doc. 1, at ¶¶ 1, 10). Frank Pawlowski is retired from the State Police. During the relevant times of this case, Pawlowski served as Commissioner of the State Police. (Pawlowski Dep., Doc. 34, Ex. B, at 12:13-22). John "Rick" Brown is retired from the State Police. During the relevant times of this case, Brown served as Deputy Commissioner of Administration and Professional Responsibility. (Brown Dep., Doc. 34, Ex. C, at 12:21-13:10). Tedescung Bandy is retired from the State Police. During the relevant times of this case, Bandy served as a Deputy Commissioner of Operations. (Bandy Dep., Doc. 34, Ex. D, at 15:18-22; 17:11-15). Martin Henry, III serves as a Major with the State Police. During the relevant times of this case, Henry served as a Captain and was the Troop Commander of Troop T. As Captain, Henry supervised Lieutenant Brahl. (Henry Decl., Doc. 34, Ex. E, at ¶¶ 1-3, 6-8). Gerald Brahl is a Lieutenant with the State Police. During all times relevant to this case, Brahl was the Commander for the Eastern Patrol Section, which included Pocono Station. Lieutenant Brahl supervised Sergeant Holly-Storms. (Id. at ¶¶ 7-9). Judith Holly-Storms is retired from the State Police. From March 2009 until her retirement in January 2010, Holly-Storms served as Sergeant of the Pocono Station. As Sergeant, Holly-Storms supervised the three Corporals assigned to the Pocono Station. (Id. at ¶¶ 9-11; Holly-Storms Decl., Doc. 34, Ex. F, at ¶¶ 1-2). During this time period, three corporals were assigned to the Pocono station: (1) Corporal

---

[1] The Court cites heavily from Defendants' Statement of Material Facts because Plaintiff has admitted to a significant portion of them. To the extent there is a dispute as to a material fact, the Court will so note.

Michael Durff; (2) Corporal Richard Verbonitz; and (3) Corporal Jeffrey Taylor. (Henry Decl. at ¶ 12; Holly-Storms Decl. at ¶ 4). Andrea Weichman is retired from the State Police. From October 2008 until her retirement in October 2011, Weichman served as a Trooper assigned to Pocono Station. (Henry Decl. at ¶ 44). As a Trooper, Weichman was Corporal Taylor's subordinate, although Weichman did not work directly under Taylor. (Taylor Dep., Doc. 34, Ex. G, at 159:12-22).[2]

In December 2008, a meeting was held between Lieutenant Brahl, Sergeant Fernbach, Corporal Durff, and Corporal Taylor regarding the establishment of a minimum number of contacts (traffic arrests and warnings) that troopers were expected to make per month. (*Id*. at 41:19-42:16; 43:17-44:25). Corporal Taylor complained at the meeting that this amounted to an illegal quota system in violation of Pennsylvania law. (*Id*. at 49:17-19). According to Plaintiff, an officer's failure to implement the quota would result in the loss of eligibility for overtime compensation. (*Id*. at 74:2-9). State Police policy (Field Regulation 1.1.7) requires an officer to report, through his chain of command, any violations by other officers of departmental policy, Pennsylvania law, or federal law. (Henry Decl. at ¶¶ 39-40). Sometime thereafter, Corporal Taylor sent a letter, via the chain of command, to Commissioner Pawlowski alleging that a quota system existed in Troop T. (Taylor Dep. at 85:5-12). Corporal Taylor presented the letter to Sergeant Holly-Storms, as well as to the Internal Affairs investigator Sergeant Brad Getz. (*Id*.; *see also* Doc. 44, Ex. J)

---

[2] Plaintiff denied this statement in Defendants' Statement of Facts, but his own deposition testimony shows he does not, in fact, dispute this statement.

Additionally, State Police officers who work more hours than their assigned shift are entitled to overtime pay under the collective bargaining agreement. (Henry Decl. at ¶ 14). At Troop T, Troopers and Corporals were permitted to volunteer to work discretionary overtime, which typically involved patrolling construction sites along the Pennsylvania Turnpike. (Id. at ¶ 15). The amount of discretionary overtime opportunities would fluctuate throughout the year based upon weather and construction schedules. For example, overtime opportunities would typically decrease during the winter months because fewer construction jobs would occur during those months. (Henry Decl. at ¶ 17; Taylor Dep. at 72:24-73:1). In 2008, Corporal Taylor worked the least amount of overtime of the Corporals and Troopers at the Pocono Station. (Dec. 2008 Overtime Summary, Doc. 34, Ex. I). Corporal Taylor worked little to no overtime during January through March 2009. (Taylor Dep. at 203:1-18).

In October 2009, Sergeant Holly-Storms removed all three of the Corporals at Pocono Station from receiving discretionary overtime. (Taylor Dep. at. 300:19-301:3). Between December 2008 and November 2011, only Corporal Durff received higher class pay. (Id. at 209:25-210:18). Corporal Taylor worked fewer holidays than the other corporals. (Id. at 185:21-186:3). Corporal Taylor never received any disciplinary action during the relevant time period. (Id. at 292:20-293:2).[3]

Taylor was involved in a motor vehicle accident with a truck in February 2008. (Id. at 20:10-21, 24:9-13, 32:21-24). Taylor received medical treatment for two years following the accident. (Id. at 24:9-13). In early to mid-2009, Captain Henry observed Corporal Taylor

---

[3] Again, Plaintiff denies this statement from Defendants' Statement of Facts, but his own deposition testimony shows this statement is undisputed.

4

having difficulty get up from a chair and walk. (Henry Decl. at ¶¶ 24-25). Captain Henry asked Lieutenant Brahl to let the Station Commander, Sergeant Holly-Storms, know to keep an eye on Corporal Taylor's limp and to get back to him if any problems developed. (Id. at ¶ 27). State Police regulations give the Troop Commander, Captain Henry, the authority to recommend individuals be evaluated to determine fitness for duty if the commander believes there is an issue. (Id. at ¶ 28).

On January 8, 2010, Sergeant Holly-Storms sent Captain Henry correspondence recommending that Corporal Taylor be assessed based upon her observation of overt physical limitations exhibited by Taylor. (Id. at ¶ 30; see also Henry Att. 2). Pursuant to State Police regulations, Captain Henry forwarded the correspondence to the Department of Human Resources, who in turn forwarded the correspondence to the State Police medical officer, Dr. Michael S. Marrone. (Henry Decl. at ¶ 33). Dr. Marrone recommended that Corporal Taylor undergo a Functional Capacity Evaluation ("FCE") to determine whether he was fit for active duty. (Id. at ¶ 34; see also Henry Att. 3). Based upon Dr. Marrone's recommendations and direction from the Bureau of Human Resources, Captain Henry ordered that Corporal Taylor be placed on limited duty pending the evaluation and results. (Henry Decl. at ¶ 36). Corporal Taylor was assigned to medically-limited duty from January 29, 2010 until March 31, 2010. (Id. at ¶ 38).

Plaintiff grieved the decision requiring his submission to a FCE and his placement on limited duty. (Doc. 44, Ex. S). The Pennsylvania State Police Troopers' Association submitted Plaintiff's grievance to final and binding arbitration. An arbitrator ruled that the Pennsylvania

5

State Police "did not have reasonable cause to require the grievant to undergo fitness for duty testing under the specific fact situation in this matter." (Doc. 44, Ex. Y, at 25). Plaintiff also grieved his denial of overtime for the month of July 2009 (Doc. 44, Ex. N) and the denial of intrusion pay (Doc. 44, Ex. R).

Sometime in 2009, Corporal Taylor initiated an internal investigation against Trooper Weichman relating to the mishandling of evidence. (Taylor Dep. at 162:3-164:6). Corporal Taylor submitted the report to Sergeant Holly-Storms. (*Id.* at 164:5-14). On January 6, 2010, Captain Henry initiated a Disciplinary Action Report ("DAR") against Trooper Weichman for violating State Police policy relating to evidence collection and storage. (Henry Decl. at ¶ 45; *see also* Henry Att. 4). In May of 2009, Corporal Taylor reported to Sergeant Holly-Storms that Trooper Weichman cited the incorrect radar unit serial number on traffic citations. (Taylor Dep. at 165:24-167:24). On August 2, 2010, Captain Henry initiated another DAR against Trooper Weichman for violating State Police regulations relating to knowingly entering inaccurate information on reports, inappropriate conduct for a member of the State Police, and "provid[ing] false statements" during internal investigations. (Henry Decl. at ¶ 47; *see also* Henry Att. 5). Trooper Weichman was suspended for fifteen days without pay. (Weichman Dep., Doc. 34, Ex. H, at 24:3-13).

In March of 2010, Corporal Taylor again complained about Trooper Weichman to the acting Station Commander, Corporal Durff. (Taylor Dep. at 273:5-275:2). That same month, Corporal Durff placed Corporal Taylor on a straight dayshift schedule. (*Id.*).

Meanwhile, in November 2009, Trooper Weichman had filed a harassment complaint against Corporal Taylor with the Pennsylvania Human Relations Commission ("PHRC") and the State Police Equal Employment Opportunities ("EEO") office.[4] (Weichman Dep. at 60:13-16; 61:19-62:10; 64:6-22). The complaints did not result in any disciplinary action against Plaintiff. (Taylor Dep. 167:25-169:1; 292:20-293:2; Doc. 44, Ex. F, 198:10-25).

Plaintiff admitted that he had no evidence that Pawlowski had any involvement in any alleged retaliatory acts against him. (Taylor Dep. 91:4-22; 122:9-124:21; 134:12-137:15; Doc. 44, Ex. F, 141:3-142:1, 147:3-12). Plaintiff admitted that he possessed no evidence that any of Brahl's actions related to Plaintiff's opposition to the alleged quota system and that the only "evidence" he had was the number of his own complaints against his superiors. (Taylor Dep. at 185:2-186:23; 204:2-206:4; 207:24-208:20; 219:3-15; Doc. 44, Ex. F, 289:4-292:8). Plaintiff admitted that the only evidence he had that Brown retaliated against him was Brown's alleged involvement in the FCE, even though Plaintiff did not know who was involved in the FCE process. (Taylor Dep. at 139:20-140:8; 282:1-8). Finally, Plaintiff admitted that he had no evidence as to any decision by Bandy involving himself. (*Id*. at 159:6-11).

## STANDARD OF REVIEW

Through summary adjudication the court may dispose of those claims that do not present a "genuine issue as to any material fact." FED. R. Civ. P. 56(a). "As to materiality, ... [o]nly disputes over facts that might affect the outcome of the suit under the governing law will

---

[4] Based on Weichman's testimony, the Court assumes that when she filed her PHRC complaint, it was cross-filed with the EEO. However, this assumption has no bearing on the ultimate resolution of Plaintiff's claims and is, therefore, not an improper finding of fact.

properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 2510, 91 L. Ed. 2d 202 (1986). The party moving for summary judgment bears the burden of showing the absence of a genuine issue as to any material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548, 2552, 91 L. Ed. 2d 265 (1986). Once such a showing has been made, the non-moving party must offer specific facts contradicting those averred by the movant to establish a genuine issue of material fact. *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888, 110 S. Ct. 3177, 111 L. Ed. 2d 695 (1990). "Inferences should be drawn in the light most favorable to the non-moving party, and where the non-moving party's evidence contradicts the movant's, then the non-movant's must be taken as true." *Big Apple BMW, Inc. v. BMW of N. Am., Inc.*, 974 F.2d 1358, 1363 (3d Cir. 1992), *cert. denied* 507 U.S. 912 (1993).

## DISCUSSION

I. <u>Pawlowski, Brown, Bandy, and Brahl's Motion for Summary Judgment</u>

Plaintiff's Complaint alleges that Pawlowski, Brown, Bandy, and Brahl violated Plaintiff's First Amendment rights through retaliatory activity premised upon Plaintiff's oral complaints and a single written complaint[5] submitted to the Pennsylvania State Police chain of command

---

[5] In the letter from Plaintiff to Pawlowski (Doc. 44, Ex. J), Plaintiff wrote:

1. I have documentation that a member has been writing citations and has been falsifying information on citations. It has further come to my attention that his is common practice by members of this department. I have made my supervisors aware of the situation and nothing has been done about it. I have been treated poorly by my command staff since making the report. I have also learned that this has been common practice by other members at other stations.

2. I also have information that this station is engaging in an illegal quota system regarding traffic citations. I believe this may lead to more false citations issued against the motoring public.

8

through Sergeant Holly-Storms regarding an allegedly illegal quota system instituted at the Pocono Station.

"Public employees have a First Amendment right to speak freely on matters of public concern." *Curinga v. City of Clairton*, 357 F.3d 305, 309 (3d Cir. 2004). As the Third Circuit noted in *Watters v. City of Philadelphia*, "[j]udicial vigilance is required to ensure that public employers do not use their authority to silence discourse on matters of public concern simply because they disagree with the content of the employee's speech." 55 F.3d 886, 891 (3d Cir. 1995).

> A public employee's retaliation claim for engaging in protected activity must be evaluated under a three-step process. *Green v. Phila. Hous. Auth.*, 105 F.3d 882, 885 (3d Cir.1997); *Pro v. Donatucci*, 81 F.3d 1283, 1288 (3d Cir.1996). First, plaintiff must establish the activity in question was protected. *Holder v. City of Allentown*, 987 F.2d 188, 194 (3d Cir.1993). For this purpose, the speech must involve a matter of public concern. *Connick*, 461 U.S. at 147, 103 S.Ct. 1684; *Watters*, 55 F.3d at 892. Once this threshold is met, plaintiff must demonstrate his interest in the speech outweighs the state's countervailing interest as an employer in promoting the efficiency of the public services it provides through its employees. *Pickering v. Bd. of Educ.*, 391 U.S. 563, 568, 88 S.Ct. 1731, 20 L.Ed.2d 811 (1968) (requiring courts to strike "a balance between the interests of the [employee], as a citizen, in commenting upon matters of public concern and the interest of the State, as an employer, in promoting the efficiency of the public services it performs through its employees"); *Azzaro*, 110 F.3d at 976; *Green*, 105 F.3d at 885. These determinations are questions of law for the court. *Waters*, 511 U.S. at 668, 114 S.Ct. 1878; *Green*, 105 F.3d at 885.
>
> If these criteria are established, plaintiff must then show the protected activity was a substantial or motivating factor in the alleged retaliatory action. *Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287, 97 S.Ct. 568, 50 L.Ed.2d 471 (1977); *Watters*, 55 F.3d at 892; *Swineford v. Snyder County Pa.*, 15 F.3d 1258, 1270 (3d Cir.1994). Lastly, the public employer can rebut the claim by demonstrating "it would have reached the same decision . . . even in the absence of the protected conduct." *Doyle*, 429 U.S. at 287, 97 S.Ct. 568; *Swineford*, 15 F.3d at 1270 (citing *Czurlanis v. Albanese*, 721 F.2d 98, 103 (3d

9

Cir.1983)). The second and third stages of this analysis present questions for the
fact finder and are not subject to review in this case. *Green*, 105 F.3d at 889
(recognizing second and third steps in *Pickering/Mt. Healthy* analysis are
questions for fact finder); *see also Watters*, 55 F.3d at 892 n. 3; *Zamboni v.
Stamler*, 847 F.2d 73, 79 n. 6, 80 (3d Cir.) (noting whether protected activity
acted as substantial or motivating factor in discharge and whether same action
would have been taken regardless are questions for jury), *cert. denied*, 488 U.S.
899, 109 S.Ct. 245, 102 L.Ed.2d 233 (1988); *Johnson v. Lincoln Univ.*, 776 F.2d
443, 454 (3d Cir.1985) (holding "second and third questions . . . should be
submitted to the jury").

*Baldassare v. New Jersey*, 250 F.3d 188, 194-95 (3d Cir. 2001).

The Court must first address as a threshold issue whether Plaintiff's speech is subject to

First Amendment protection, for if it is not, his claims must be dismissed. In particular, the

Court is required to evaluate Plaintiff's claims in light of the Supreme Court's holding in *Garcetti*

*v. Ceballos*, 547 U.S. 410, 126 S.Ct. 1951, 164 L.Ed.2d 689 (2006).[6] A public employee's

---

[6] Plaintiff acknowledges that the United States Supreme Court's decision in *Garcetti v. Ceballos*, governs
this case and, further, Plaintiff all but concedes that he has no cause of action under *Garcetti*. Instead, Plaintiff
makes clear in the introduction to his complaint that "Plaintiff believes [*Garcetti*] to be unconstitutional, void as
against public policy, and when applied to public employees, a violation of every law enforcement officer's right to
due process." Compl. at ¶ 1a. Plaintiff continues:

> Most Middle District courts typically find, whether founded in regulation or not, that officers have
> a "duty to report" and thus they go unprotected. The effect of the *Garcetti* decision is horribly
> oppressive. Therefore, if a law enforcement officer reports anywhere up his chain of command,
> the most egregious corruption, even within his or her own police organization, his speech is not
> protected even if his superiors destroy him and his career for speaking out about it or reporting it.

*Id.* Plaintiff further adds that:

> [t]he effect of *Garcetti* is to not only legitimize the destruction of citizen's rights (particularly a
> certain class of citizens i.e. law enforcement officers) and to encourage and institutionalize official
> corruption at the expense of the careers and free speech rights of decent law-abiding law
> enforcement officers, but it literally protects political and public corruption at the expense of the
> nation's well-being and places our courts directly in the middle of a contentious relationship
> between the existence and promotion of public corruption and the due process rights of police
> officers.

*Id.* Plaintiff believes that the Third Circuit has extended its interpretation of the "law even further than the US
Supreme Court." *Id.* "By destroying or unreasonably limiting the 1st and 14th Amendment rights of law
enforcement officers, *Garcetti* and its progeny, particularly within the jurisdiction of the Third Circuit Court of
Appeals, has fostered an environment of fear and oppression in police officers and permitted the abuse of law-
abiding officers and citizens." *Id.* Finally, Plaintiff states his intention in bringing this action: "[b]ecause plaintiff

speech is protected when: (1) the employee spoke as a citizen; (2) the statement involved a

matter of public concern; and (3) the government employer lacks "an adequate justification for

treating the employee differently from any other member of the general public." *Id.* at 418.

"[R]elevant to the determination of public concern is the content, context, and form of the

statements, 'as determined by the whole record.'" *Smith v. Cent. Dauphin Sch. Dist.*, 419 F.

Supp. 2d 639, 646 (M.D. Pa. 2005) (citing *Connick v. Meyers*, 461 U.S. 138, 147-48, 103, S.Ct.

1685, 75 L.Ed.2d 708 (1983)).

"When public employees make statements pursuant to their official duties, the

employees are not speaking as citizens for First Amendment purposes, and the Constitution

does not insulate their communications from employer discipline." *Garcetti*, 547 U.S. at 421.

Since *Baldassare* and *Garcetti*, the Third Circuit has preserved the distinction between public

employees who speak pursuant to their official duties and public employees who speak as

citizens on matters of public concern.[7]

---

expects that a *Garcetti* defense will be offered in this case as to Bandy and Pawlowski he has decided to attack the underpinnings of *Garcetti* itself." *Id.*

[7] "We have consistently held that complaints up the chain of command about issues related to an employee's workplace duties—for example, possible safety issues or misconduct by other employees—are within an employee's official duties." *Morris v. Philadelphia Hous. Auth.*, 487 F. App'x 37, 39 (3d Cir. 2012). "Admittedly, . . . there is a social good that comes from internal reporting of misconduct up the chain of command. The Supreme Court has decided, however, that we should not constitutionalize management disputes between the government and its employees." *Id.* at 40 (internal citations and quotation marks omitted); *see also Garcia v. Newtown Twp.*, 483 F. App'x 697, 702 (3d Cir. 2012) ("[I]nternal complaints about workplace management and matters that are articulated solely because of their personal effect on the employee are not protected speech."); *Emigh v. Steffee*, 442 F. App'x 660, 665 (3d Cir. 2011) (finding that the plaintiff-employee "did not indicate that he wanted the public to learn of Fulmer's purported misconduct [because] [t]he BPR complaint was filed *internally* with the PSP, and handled in accordance with the PSP's internal operating procedures.") (emphasis in original); *see also Knight v. Drye*, 375 F. App'x 280 (3d Cir.), *cert. denied*, 131 S. Ct. 463, 178 L. Ed. 2d 288 (2010) (affirming district court's grant of summary judgment in favor of defendants).

> Knight's complaint up the chain of command to Officer Milligan and Police Chief Campbell is not speech protected by the First Amendment. . . . Although Knight argues that his report should be protected by the Third Circuit's recent pronouncement in *Reilly v. City of Atlantic City*, 532 F.3d 216 (3d Cir. 2008), his reliance on that case is misplaced. In *Reilly*, we found that the truthful

11

Plaintiff's First Amendment claims are predicated on his belief that he was punished for speaking out against an alleged quota system instituted at his barracks by a denial of overtime opportunities, which resulted in an alleged loss of income. (*See* Taylor Dep. at 74:2-9) ("If I want to get overtime, I'm going to enforce the quota."). "[W]here a plaintiff's alleged protected speech concerns matters specific only to his own interest/concerns, this is *not* properly designated as First Amendment Speech for the purposes of a § 1983 action." *Lane v. Bonin*, 772 F. Supp. 2d 678, 684 (W.D. Pa. 2011) (emphasis in original); *see also Foraker v. Chaffinch*, 501 F.3d 231 (3d Cir. 2007) (holding that Delaware state police firing range instructors were not protected by First Amendment following their complaints about safety conditions at a firing range), *abrogated on other grounds by Borough of Duryea v. Guarnieri*, 564 U.S. --, 131 S.Ct. 2488, 180 L.Ed.2d 408 (2011). Plaintiff's oral and written complaint regarding the "quota system" (Doc. 44, Ex. J), his grievances over the denials of overtime and intrusion pay (Doc. 44, Exs. N, R), and his grievance over the directive that he submit to a FCE and his placement on limited duty (Doc. 44, Ex. S), relate only to his own working conditions, and these complaints and grievances were filed internally with the Pennsylvania State Police and lodged through Plaintiff's chain of command.

Similarly, Plaintiff's belief that his First Amendment rights were violated because he filed internal affairs complaints against Weichman wherein he brought to his superiors' attention Weichman's violations of department rules and policies is incorrect. Not only did Plaintiff have

testimony by a police officer in court constituted "citizen speech" and was therefore precluded from the "official duties" doctrine set forth in *Garcetti*. *Reilly*, 532 F.3d at 231. However, Knight's out-of-court statements to his superiors do not fall into this category.

*Knight*, 375 F. App'x at 282-83.

a duty to report any crime or violation of department policy committed by a fellow officer, but he in fact did so through the proper channels by lodging them with his chain of command. *Foraker*, 501 F.3d at 243 ("In making their voices heard up the chain of command and reporting to the State Auditor under order, [plaintiffs] spoke pursuant to their duties as government employees . . ."); *Hill v. Borough of Kutztown*, 455 F.3d 225, 242 (3d Cir. 2006) (concluding that a borough manager's reports up the chain of command about the mayor's alleged harassment of borough employees were not protected speech because he made the reports, as he conceded in the complaint, "as part of his duties as Manager."); *see also Fulmer v. Pennsylvania*, 460 F. App'x 91 (3d Cir. 2012).

In *Fulmer,* the Third Circuit held that "[a]s the officers in *Foraker* 'were expected . . . to report problems concerning the operations at the range up the chain of command[,]' Fulmer was expected to report misconduct by fellow officers to his supervisors and to participate in internal investigations." *Id*. at 93 (internal citation omitted). Fulmer, like the Plaintiff in the present action, was a member of the Pennsylvania State Police, and was subject to the same requirement to disclose illegality or breaches of department protocol to his superiors when he allegedly witnessed improper activity. The Third Circuit wrote:

> In making these statements, Fulmer was carrying out his duties under police regulations to "promptly report to [his] supervisor[] any information which comes to [his] attention and which tends to indicate that any member or employee has violated any law, rule, regulation, or order" and "to truthfully and completely answer all questions" in internal investigations.

*Id.* at 93-94.

13

In the context of Plaintiff's position as a member of the Pennsylvania State Police, his

oral and written complaint about alleged illegal activity (*i.e.* his claims that he and the other

troopers of Troop T, Pocono Station, were compelled to enforce an unlawful quota system for

traffic citation issuance), do not constitute protected free speech under the First Amendment

because Plaintiff was speaking pursuant to his official duties and not as a private citizen. "A

public employee does not speak 'as a citizen' when he makes a statement 'pursuant to his

official duties.'" *See Hill*, 455 F.3d at 242 (internal citations omitted). Accordingly, Plaintiff's

complaints regarding the alleged quota system are not accorded First Amendment protection.

The Supreme Court's holding in *Garcetti* established that "when public employees make

statements pursuant to their official duties, the employees are not speaking as citizens for First

Amendment purposes, and the Constitution does not insulate their communications from

employer discipline." *Garcetti*, 547 U.S. at 421. In the case at bar, Plaintiff raised a complaint

about a specific work requirement allegedly implemented by his superiors, and he expressed

his dissatisfaction through the channels of communication accorded for the assertion of such

issues.

Defendants appropriately raise the Third Circuit's opinion in *Aubrecht v. Pennsylvania*

*State Police*, a case that is nearly factually identical to this case. 389 F. App'x 189 (3d Cir.

2010). In *Aubrecht*, a Pennsylvania state trooper was allegedly denied overtime opportunities

and given sub-par performance evaluations in retaliation for his complaints filed through his

chain of command regarding an illegal quota system. *See id.* at 191. The Third Circuit affirmed

the district court's grant of summary judgment in favor of the defendants because the trooper

14

complained about the alleged quota system, which was part of his official duties, and he did so within the workplace. *See id.* at 193. The Court noted that "all of [Aubrecht's] complaints dealt with aspects of his official duties as a police officer." *Id.* As a result, "his speech regarding the alleged 'quota' is not afforded constitutional protection." *Id.*

In the present matter, Plaintiff claims he was punished for orally complaining about the quota system within his station and because of a letter he sent to Commissioner Pawlowski about the quota system. (Taylor Dep. 49:17-19; 85:5-12; *see also* Doc. 44, Ex. J.) The letter was sent to Pawlowski through his chain of command, first through Sergeant Holly-Storms, and then to Sergeant Getz of Internal Affairs. (Taylor Dep. at 85:5-12.) The complaint was treated as an internal matter and sent up the chain of command in accordance with internal operating procedures.[8]

In addition, Plaintiff admits in his own deposition testimony that he could provide no evidence that Pawlowski had any degree of involvement in retaliatory acts allegedly taken against him. (Taylor Dep. 91:4-22; 122:9-124:21; 134:12-137:15; Doc. 44, Ex. F, 141:3-142:1, 147:3-12). Plaintiff similarly admitted that he lacked any evidence linking Brahl, Brown, or Bandy to retaliatory acts against him. (*See, e.g.*, Taylor Dep. at 139:20-140:8; 159:6-11; 185:2-186:23; 204:2-206:4; 207:24-208:20; 219:3-15; 282:1-8; Doc. 44, Ex. F, 289:4-292:8). Further,

---

[8] In opposition to Defendants' Motions for Summary Judgment, Plaintiff filed affidavits (Doc. 46, Ex. 1 and Doc. 47, Ex. 1) in which he claimed that Pawlowski retaliated against him for complaining about the quota system, claims that were both unsubstantiated and contradicted by the record (see above). "[C]onclusory, self-serving affidavits are insufficient to withstand a motion for summary judgment." *Blair v. Scott Specialty Gases*, 283 F.3d 595, 608 (3d Cir. 2002). Moreover, "if it is clear that an affidavit is offered solely for the purpose of defeating summary judgment, it is proper for the trial judge to conclude that no reasonable jury could accord that affidavit evidentiary weight and that summary judgment is appropriate." *Jiminez v. All American Rathskeller, Inc.*, 503 F.3d 247, 253 (3d Cir. 2007). Plaintiff's post-deposition affidavits clearly were created for the sole purpose of defeating summary judgment and, as such, are accorded no evidentiary weight.

as the Third Circuit held in *Rode v. Dellarciprete*, "[a] defendant in a civil rights action must have personal involvement in the alleged wrongs; liability cannot be predicated solely on the operation of *respondeat superior*." 845 F.2d 1195, 1207 (3d Cir. 1988). Thus, Pawloswki, Brahl, Brown, and Bandy cannot be held liable for any alleged retaliation in this case.

Plaintiff asserts in his Affidavit that a copy of his letter to Pawlowski objecting to the citation quota system was posted at the Fraternal Order of Police ("FOP") Lodge in Dunmore, PA at some unknown time. (Taylor Aff., Doc. 46, Ex. 1, at ¶ 11). Such an assertion does not save Plaintiff from the entry of summary judgment against him. Entirely apart from the fact that the FOP is a labor organization and not a public entity and its office is not in any sense tantamount to a public forum, Plaintiff's letter to Pawlowski is not speech on a matter of public concern and, as explained earlier herein, presents speech engaged in by Plaintiff "pursuant to his official duties." *Hill*, 455 F.3d at 242; *see also Foraker*, 501 F.3d at 243.

Because Plaintiff complained about the alleged illegal quota policy through his chain of command, Plaintiff did not engage in protected speech under the First Amendment. As a result, Plaintiff's First Amendment claim against Defendants Pawlowski, Brown, Bandy, and Brahl must fail as a matter of law.

## II. Henry, Holly-Storms, and Weichman's Motion for Summary Judgment

The Court next addresses Plaintiff's gender-based equal protection claim against Captain Henry and Sergeant Holly-Storms and Plaintiff's retaliation/discrimination claim against Trooper Weichman.

In October 2009, Sergeant Holly-Storms removed all three of the Corporals at Pocono Station from receiving discretionary overtime. (Taylor Dep. at. 300:19-301:3). Between December 2008 and November 2011, only Corporal Durff received higher class pay. (*Id.* at 209:25-210:18). Corporal Taylor worked fewer holidays than the other corporals. (*Id.* at 185:21-186:3). Corporal Taylor never received any disciplinary action during the relevant time period. (*Id.* at 292:20-293:2).

Sometime in 2009, Corporal Taylor initiated an internal investigation against Trooper Weichman relating to the mishandling of evidence. (Taylor Dep. at 162:3-164:6). Corporal Taylor submitted the report to Sergeant Holly-Storms.[9] (*Id.* at 164:5-14). As a consequence of this report, Captain Henry initiated a DAR against Weichman for breaching Pennsylvania State Police policies regarding the collection and maintenance of evidence. (Henry Decl. at ¶ 45; *see also* Henry Att. 4). Then, in May 2009, Plaintiff reported to Sergeant Holly-Storms that Weichman recorded the incorrect radar unit serial number on traffic tickets. (Taylor Dep. 165:24-167:24.) As a result, Captain Henry initiated another DAR against Weichman for knowingly entering inaccurate information on reports, inappropriate conduct for a member of the State Police, and lying during the course of an internal investigation. (Henry Decl. ¶ 47; *see also* Henry Att. 5). Weichman was suspended for fifteen days without pay. (Weichman Dep. 24:3-13).

---

[9] Judith Holly-Storms is retired from the State Police. From March 2009 until her retirement in January 2010, Holly-Storms served as Sergeant of the Pocono Station. As Sergeant, Holly-Storms supervised the three Corporals assigned to the Pocono Station. (Henry Decl. at ¶¶ 9-11; Holly-Storms Decl., at ¶¶ 1-2).

17

In November 2009, Weichman filed a harassment complaint against Plaintiff with the

PHRC and the State Police EEO office. (*Id.* 60:13-16; 61:19-62:10; 64:6-22.) The complaints

did not result in any disciplinary action taken against Plaintiff. (Taylor Dep. 167:25-169:1;

292:20-293:2; Doc. 44, Ex. F, 198:10-25). In March of 2010, Plaintiff again complained about

Weichman to his station commander, Corporal Durff. (Taylor Dep. 273:5-275:2). Corporal

Durff placed Plaintiff on a straight dayshift schedule that same month. (*Id.*).

## A. Plaintiff's Equal Protection Claim

Plaintiff maintains that he was subjected to discriminatory treatment because he is a

male. Plaintiff's brief provides his view of the alleged discriminatory treatment:

> On or about early spring 2009 the plaintiff caught female trooper (Andrea Weichman) throwing away evidence (drugs). Plaintiff filed a complaint initiating an internal investigation, the course of which begins, by regulation, with plaintiff's chain of command i.e., Sgt. Storms. Consequently plaintiff went to Storms to discuss the circumstances of Trooper Andrea Weichman's misconduct. Sgt. Storms was extremely hostile to Taylor. Holly-Storms began to holler at plaintiff and lecture him sternly about how women had been mistreated within the PSP for years and was extremely difficult and abusive with Taylor because he was complaining about a female officer's unlawful actions.
>
> Shortly thereafter, on or about early May 2009 Taylor was confronted by Sgt. Holly-Storms and accused of "stealing" a breathalyzer machine. Luckily another PSP Trooper was close by and advised Sgt. Storms that the machine was out for testing. This baseless incident is demonstrative of the hostile and abusive way that Sgt. Storms treated Taylor both during the discussion of duty assignment and in the presence of other personnel.

(Doc. 47 at 7-8).

To establish a gender discrimination claim under the Equal Protection Clause pursuant

to Section 1983, a plaintiff must show: (1) disparate treatment in relation to other similarly

18

situated employees, and (2) that the illicit treatment was based on gender. See Andrews v. City of Philadelphia, 895 F.2d 1469, 1478 (3d Cir. 1990). "Persons are similarly situated under the Equal Protection Clause when they are alike 'in all relevant aspects.'" Startzell v. City of Philadelphia, 533 F.3d 183, 203 (3d Cir. 2008). "A party making an equal protection claim 'must show intentional discrimination against him because of his membership in a particular class, not merely that he was treated unfairly as an individual.'" Vicky M. v. Ne. Educ. Intermediate Unit, 689 F. Supp. 2d 721, 734 (M.D. Pa. 2009).

Nothing in the record supports Plaintiff's contention that he was the subject of discrimination based on his gender. Specifically, Plaintiff complains that he was denied overtime opportunities because he was male. Plaintiff's deposition shows that whenever Plaintiff was asked to provide examples of similarly situated individuals who received better treatment, he always provided the names of other male officers. (See Taylor Dep. 209:25-210:18; 284:6-22). Sergeant Holly-Storms suspended overtime pay for all three corporals in Troop T. (Id. at. 300:19-301:3). In fact, during the relevant time period, there were no female corporals stationed at Troop T, so there could be no gender-based discrimination claim. (Henry Decl. at ¶ 12; Holly-Storms Decl. at ¶ 4). These facts belie Plaintiff's allegation that he was treated unfairly based on his gender when compared to others similarly situated; that is, females holding the rank of corporal stationed at the same State Police barracks. There is no evidence in the record to indicate that a similarly situated female officer was treated differently than Plaintiff.

In addition, Plaintiff claims that he was forced to undergo a FCE to determine whether he was physically fit to perform his police duties after superiors noticed that he walked with a limp. Plaintiff alleges that he was ordered placed on limited duty pending the results of his evaluation. Plaintiff points to no discriminatory conduct which would tend to show that he was treated differently than any other female officer who displayed signs of physical impairment.

The absence of evidence of gender-based preferential treatment undermines Plaintiff's allegation that he was subjected to treatment different from other similarly-situated officers. Mere assertions offered by Plaintiff in an affidavit are insufficient to support Plaintiff's claim, and a "class of one" theory of discrimination is inapplicable to Plaintiff as a public employee. *Engquist v. Oregon Dep't of Agriculture*, 553 U.S. 591, 609, 128 S.Ct. 2146, 170 L.Ed.2d 975 (2008) ("ratifying a class-of-one theory of equal protection in the context of public employment would impermissibly 'constitutionalize the employee grievance.'").

Plaintiff offers no evidence in support of an Equal Protection claim; he has not come forward with evidence to show that the treatment of which he complains was based on his gender. Accordingly, Plaintiff's accusation of gender discrimination is belied by the record and summary judgment must be granted in Defendants' favor on this claim.

B. Plaintiff's Claim Against Weichman

Plaintiff claims that he was subjected to discrimination by Weichman, who was his subordinate at the Pocono Station. (Taylor Dep. 159:12-22.) The only evidence proffered by Plaintiff in support of this claim is that Weichman filed a PHRC/EEO complaint against him.

To state a claim under Section 1983, a plaintiff must allege that a defendant, acting

under color of state law, deprived him of a right guaranteed by either federal law or the United

States Constitution. See 42 U.S.C. § 1983; Galena v. Leone, 638 F.3d 186, 197 (3d Cir. 2011).

"The traditional definition of action under color of state law . . . requires that one liable under §

1983 have exercised power possessed by virtue of state law and made possible only because

the wrongdoer is clothed with the authority of state law." Abbott v. Latshaw, 164 F.3d 141, 146

(3d Cir. 1998) (emphasis added) (internal citations and quotation marks omitted). "[P]rivate

action is not converted into one under color of state law merely by some tenuous connection to

state action. The issue is not whether the state was involved in some way in the relevant

events, but whether the action taken can be fairly attributed to the state itself." Groman v. Twp.

of Manalapan, 47 F.3d 628, 638 (3d Cir. 1995). "Under any test, the inquiry is fact-specific."

Kach v. Hose, 589 F.3d 626, 646 (3d Cir. 2009) (internal citations and quotation marks

omitted). Furthermore,

> [a]lthough state employment is generally sufficient to render the defendant a
> state actor, not all torts committed by state employees constitute state action,
> even if committed while on duty. For instance, a state employee who pursues
> purely private motives and whose interaction with the victim is unconnected with
> his execution of official duties does not act under color of law. In contrast, off-
> duty police officers who flash a badge or otherwise purport to exercise official
> authority generally act under color of law. Thus, the essence of section 1983's
> color of law requirement is that the alleged offender, in committing the act
> complained of, abused a power or position granted by the state.

Bonenberger v. Plymouth Twp., 132 F.3d 20, 24 (3d Cir. 1997) (internal citations and quotation

marks omitted).

Although Weichman is a public employee, her employment status is not dispositive of the issue of whether she was a state actor. When she filed her PHRC/EEO complaint against Plaintiff, she was not "abus[ing] a power or position granted by the state," *Bonenberger*, 132 F.3d at 24, and the state was not acting through Weichman as its agent. In other words, the complaint against Plaintiff was *not* "made possible only because [Weichman] is clothed with the authority of state law." *Abbott*, 164 F.3d at 146. Rather, it is clear to this Court after conducting a fact-specific inquiry that Weichman was acting in a private capacity when she filed a PHRC/EEO complaint against Plaintiff. *See Abbott*, 164 F.3d at 146 ("Diehl admits that he acted as a constable, and identified himself as such to Abbott. The other officers arrived on the scene in response to Diehl's call for assistance, and were on duty. All four law enforcement officers were clearly state actors.").

Furthermore, even assuming that Weichman was a state actor when she filed a PHRC/EEO complaint, she cannot be said to have committed a private tort. The only action Weichman took was to exercise her right to file a PHRA/EEO complaint. *See* 43 P.S. §§ 953, 959; *see also Clay v. Adv. Computer Applications, Inc.*, 559 A.2d 917, 921 (Pa. 1989). Plaintiff admitted at his deposition that he was not disciplined in relation to the Weichman's filing, and he did not even receive a reprimand. (Taylor Dep. 167:25-169:1; 292:20-293:2; Doc. 44, Ex. F, 198:10-25). Therefore, Plaintiff did not suffer a deprivation of his rights when Weichman exercised her right to file a PHRC/EEO complaint. Accordingly, summary judgment will be granted in favor of Defendants Henry, Holly-Storms, and Weichman.

## CONCLUSION

For the reasons set forth in this memorandum opinion, Defendants' Motions for

Summary Judgment (Docs. 31 and 32) will be granted.

DATE: February 19, 2013

Robert D. Mariani
United States District Judge